**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERICA SHIPPEN,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | **NO. 2:26-cv-02207-MRP** |
| **PLYMOUTH MEETING FRIENDS SCHOOL,** | : | |
| Defendant. | : | |

**Perez, J.** **November 16, 2026**

## MEMORANDUM

Plaintiff Erica Shippen alleges that Defendant Plymouth Meeting Friends School ("PMFS" or "School") discriminated against her based on her race and negligently misrepresented its offer of employment when it rescinded her employment agreement for the 2024–2025 school year. She brings two claims: racial discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, Section 1981, 42 U.S.C. § 1981, *et seq.*, and the Pennsylvania Human Rights Act, 43 Pa. C.S.A. § 951, *et seq.*, ("PHRA") (Count I); and negligent misrepresentation (Count II). PMFS has moved to dismiss the complaint. Shippen has stated a claim for race discrimination; however, she has failed to put forth sufficient facts supporting justifiable reliance on any alleged misrepresentation. For that reason and for the reasons discussed below, PMFS's motion is granted in part, and Shippen's negligent misrepresentation claim will be dismissed.

## I. Factual Background[1]

Shippen is a Black woman who was hired by PMFS in March 2022 as an Associate Head of School. Am. Compl., ECF No. 13 at 2. During her employment, Shippen implemented PMFS's

[1] For this motion to dismiss, the Court accepts the Amended Complaint's factual allegations as true. *See Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 405 (3d Cir. 2008).

first faculty evaluation process, led the curriculum review of PMFS's Language Arts program, established biweekly support meetings with teaching faculty, and strengthened PMFS's student support services. *Id.* at 2.

On June 6, 2024, PMFS issued Shippen an employment agreement for the 2024–2025 school year. *Id.* at 3. On July 1, 2024, the Head of School verbally informed Shippen that the School Committee ("the Committee") requested rescission of that employment agreement. *Id.* at 3. On July 3, 2024, PMFS detailed the decision in writing and proposed that Shippen continue to work as an hourly employee through the end of August 2024. *Id.* at 3.

Shippen received her 2024–2025 employment agreement at the same time the School's other administrators received theirs and was given no indication that her position was at risk. *Id.* at 6. The rescission of the employment agreement coincided with a period of tension between the Head of School and the Committee. *Id.* at 4. Several members of the Committee were insistent on preserving what they called the "Plymouth way," a culture resistant to change and to diversity of perspective, in which employees who did not conform were marginalized. *Id.* at 4.

In January 2024, Jeff Markovitz joined the Committee. Markovitz was loud, confrontational, and repeatedly questioned and challenged decisions made by the Head of School and the Clerk of the Committee, both of whom are Black. *Id.* at 4. After Markovitz joined the Committee, multiple Committee members of color departed. Turea Hutson was unhappy with the direction of the Committee and found Markovitz disruptive and polarizing. *Id.* at 4. Antonio Williams attributed his resignation to concerns about the School's environment, its racial dynamics, and the decision to eliminate Shippen's position. *Id.* Markovitz was among those who raised and advocated for the rescission of Shippen's employment agreement; he also voted in favor of it. *Id.* at 4.

PMFS had a $400,000 forecasted budget deficit and listed it as the reason for rescinding Shippen's employment agreement. *Id.* at 5. The Committee reached the decision to revoke Shippen's agreement at meetings on June 20 and 25, 2024. *Id.* at 5. At the meetings, the Committee directed that the required budget reduction come from "senior administration" and that it not include eliminating a faculty position. *Id.* at 5. The teaching faculty shielded from the reduction were nearly all white, with the exception of one Hispanic alumna of PMFS. *Id.* at 5. Shippen was the only employee terminated for the school year. *Id.* Her salary of $95,460 amounted to less than one-third of the forecasted deficit. *Id.*

At some point, PMFS received a $1.3 million bequest. *Id.* at 5. The Head of School planned to apply the bequest, once received, to the operating budget to eliminate the deficit and thereby avoid the need to terminate any employee, and use the remaining balance to establish an endowment. *Id.* at 5–6. Nevertheless, the Committee eliminated the Associate Head of School position and redistributed core aspects of the position to the School Counselor and the Learning Specialist, both of whom are White. *Id.* at 3. Additionally, the former Director of Admission, Joyce Colzani, who is White, was not terminated despite a decline in enrollment. *Id.* at 3. PMFS retained other members of its administrative leadership who are not Black, including the Director of Facilities, who is White, and the Director of Admissions and Enrollment Management, who is Hispanic. *Id.* at 3.

The primary hiring season in the independent-school community begins in the fall of the preceding year. *Id.* at 7. Shippen alleges she did not search for other job opportunities at that time based on the promise of continued employment. *Id.* at 7. By the time she learned her position was being eliminated, Shippen had already missed the primary hiring season in the independent-school community. *Id.* at 7.

## II. Procedural History

On October 4, 2024, Shippen dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), asserting claims of race discrimination. ECF No. 13 ¶ 5. On January 6, 2026, EEOC issued a Determination and Notice of Rights. *Id.*

Shippen initiated this lawsuit against PMFS on April 6, 2026. *Id.*; ECF No. 1. PMFS moved to dismiss the complaint on June 12, 2026, ECF No. 11, and Shippen filed an Amended Complaint on July 3, 2026, ECF No. 13. The Amended Complaint raises two counts: race discrimination under Title VII, Section 1981, and the PHRA (Count I), and negligent misrepresentation (Count II). *Id.* at 7–8. PMFS moved to dismiss both counts on July 17, 2026. ECF No. 15. Shippen opposed on July 31, 2026, ECF No. 17, PMFS replied on August 7, 2026, ECF No. 18, and Shippen filed a sur-reply on August 17, 2026, ECF No. 21.

PMFS's motion is now ripe for review.

## III. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual material that, when accepted as true and considered in the light most favorable to the plaintiff, states a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 405 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do. . . . [A] complaint's factual allegations must be enough to raise a right

to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008) (internal punctuation and citations omitted).

## IV. Discussion

### A. Extraneous Exhibits

As an initial matter, PMFS asks the Court to consider several exhibits not included in the FAC. ECF No. 15-2 at 2. Specifically, PMFS attaches its Personnel Handbook ("PMFS Handbook"), Shippen's 2022–23 and 2023–24 employment agreements, May through June 2024 School Committee Meeting Minutes and Reports ("Minutes"), and Colzani's employment record. *Id.* Shippen argues her claims are not based on the Minutes, Colzani's Employment Record, or the PMFS Handbook. ECF No. 17 at 6–7. Shippen makes no such argument for the employment agreements. *Id.*

The Court may consider documents attached by a defendant in a motion to dismiss without converting it to a motion for summary judgment only if the documents are "*integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). The concern raised by looking at extraneous exhibits—lack of notice to the plaintiff—is dissipated where the plaintiff relied on the documents in framing the complaint. *Id.* In other words, where the plaintiff's claims are based on extrinsic documents, the Court may consider them. *See id.* (affirming the district court's review of an annual report where part of the data contained in the report was used to support the claim but was not attached to the pleadings); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993) (affirming the district court's review of a purchase and sale agreement where the complaint is based on the exhibit and described its terms but was not attached to the pleadings); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (affirming the district court's review

of an essay where portions of the essay were quoted in the complaint to support the claim but the essay was not attached to the pleadings).

Conversely, if the complaint is not based on the document, it should not be considered. *See Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir. 2014) (determining the district court should not have considered press releases and corporate updates that were not relied on in framing the complaint); *Stratechuk v. Bd. of Educ.*, 200 F. App'x 91, 94 (3d Cir. 2006) (not precedential) (holding the district court's review of a policy that was not quoted, referenced, or used in framing the complaint was improper).

The Court will not consider the Personnel Handbook because it is not integral to, nor is it explicitly relied upon, in the complaint. The FAC does not quote, reference, or rely upon the PMFS Handbook, nor are any of Shippen's claims based upon any representations or policies contained within it. Considering it would be improper.

Nor will the Court consider the Minutes because the Amended Complaint does not indicate it was based on them. The Amended Complaint includes statements made during the Committee meetings both before and after Shippen received her employment agreement. However, this does not establish that Shippen relied on the Minutes themselves in creating the complaint. The Amended Complaint does not directly quote from or reference the Minutes.

Finally, the Court will not consider Colzani's employment record because it is not integral to or explicitly relied upon in the Amended Complaint. The record was not quoted or referenced. The Amended Complaint merely alleges that Colzani "was not terminated despite overseeing a significant decline in school enrollment." ECF No. 13 ¶ 18. The fact that the Amended Complaint discusses Colzani's treatment does not put her employment record at issue. Thus, the Court's consideration of Colzani's employment record would be improper.

### B. Count II: Negligent Misrepresentation

To prevail on a negligent misrepresentation claim, a plaintiff must prove: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005) (citations omitted).

PMFS asks the Court to dismiss Shippen's negligent misrepresentation claim because she cannot establish the first and fourth elements. Shippen has alleged sufficient facts to raise a reasonable expectation that discovery may reveal evidence necessary to show a material misrepresentation. Shippen has not, however, alleged sufficient facts to show justifiable reliance.

#### 1. Misrepresentation of a Material Fact

The first element requires a misrepresentation of a present fact. An unfulfilled promise may constitute a material misrepresentation of a present fact if the party knew it would be unable to fulfill the promise at the time it was made. *Chand v. Merck & Co., Inc.*, No. 19-0286, 2019 WL 3387056, at *8 (E.D. Pa. July 26, 2019) (finding that offering a position to an applicant who disclosed she had F-1 visa status and then rescinding it because her F-1 visa required sponsorship created an inference that the employer impliedly misrepresented that visa recipients could work for the company). Shippen alleges that the decision to terminate her position was discussed and reached at meetings on June 20 and 25, 2024. ECF No. 13 ¶ 22. However, she explains that in prior budget discussions, PMFS raised "recurring questions . . . about the need and value of [Shippen's position]." ECF No. 13 ¶ 30. These facts indicate that PMFS may have known that it would be eliminating Shippen's position before offering her the 2024–2025 employment agreement. Shippen has, therefore, raised a reasonable expectation that discovery may reveal sufficient evidence showing a material misrepresentation of a present fact.

**2. Justifiable Reliance**

In addition to demonstrating a material misrepresentation, Shippen must set forth sufficient factual allegations showing she justifiably relied on that misrepresentation. Shippen alleges that she relied on the "misrepresentations to her detriment by continuing her employment with PMFS and [forgoing] other employment opportunities." ECF No. 13 ¶ 42. She explains that if she knew "her position was at risk, she would have begun searching for employment in November 2023." ECF No. 13 ¶ 33. PMFS asserts that an employee cannot justifiably rely on an employer's promise in an at-will relationship and that Shippen has not alleged a specific opportunity that she declined in reliance on a misrepresentation.

At-will employees cannot justifiably rely on an employer's promise of continued employment, but a prospective employee can show justifiable reliance during the negotiation of an at-will employment contract. Under Pennsylvania law, an employee generally cannot justifiably rely on an employer's promise when the employment relationship is at will. *Cathcart v. Micale*, 402 F. Supp. 3d 110, 116 (E.D. Pa. 2019) (dismissing a negligent misrepresentation claim because the plaintiff could not have justifiably relied on the promises of his employer); *see also, e.g.*, *Brethwaite v. Cincinnati Milacron Mktg. Co.*, No. 94-3621, 1995 WL 232519 (E.D. Pa. Apr. 19, 1995). However, while negotiating an at-will employment contract, a party has a "right to assess the risks inherent in such employment free of the distortion of tortious conduct." *Browne v. Maxfield*, 663 F. Supp. 1193, 1203 (E.D. Pa. 1987). Courts have, therefore, allowed claims where plaintiffs show enough facts that demonstrate justifiable reliance while negotiating an at-will employment contract. *See Chand v. Merck & Co.*, No. 19-cv-00286, 2020 WL 1987269, at *8 (E.D. Pa. Apr. 27, 2020) (denying summary judgment of a negligent misrepresentation claim where the misrepresentations occurred during the negotiation phase of an at-will contract because a fact

finder could conclude that reliance was justified); *see, e.g.*, *Browne*, 663 F. Supp. at 1203; *Ramsey v. AT&T Corp.*, No. 97-CV-1301, 1997 WL 560183, at *4 (E.D. Pa. Aug. 27, 1997) (denying dismissal where an at-will employee was negotiating a new at-will employment contract with the employer).

For purposes of this Memorandum, the Court accepts Plaintiff's argument that the misrepresentation occurred during negotiations of an at-will employment agreement. Forbearance can be sufficient to raise an inference of justifiable reliance. *See Ndubizu v. Drexel Univ.*, 768 F. Supp. 2d 796, 802, 804 (E.D. Pa. 2011) (explaining that, for promissory estoppel, "[f]orbearance from other employment opportunities can . . . constitute detrimental reliance in certain situations," and extending that logic to a misrepresentation claim). However, to rely on a misrepresentation, the forbearance must occur after the misrepresentation. *See Browne*, 663 F. Supp. at 1203 (explaining that plaintiff's call to his prior employer informing him that plaintiff was going to resign after the alleged misrepresentation occurred was sufficient to show justifiable reliance); *see also Chand*, 2020 WL 1987269, at *8–9 (highlighting analogous facts to those present in *Browne*). One cannot rely on a misrepresentation made after the purported act or forbearance occurred. *See Horn v. Minn. Life Ins. Co.*, No. 17-238, 2019 WL 1791412, at *7 (E.D. Pa. Apr. 23, 2019) (explaining that, for equitable relief, the alleged misrepresentation must predate the act of reliance).

Shippen's allegation that she did not begin looking for jobs in November 2023 does not relate to the material misrepresentation she identifies—the issuance of her employment agreement in June 2024. Shippen claims that "because PMFS gave her no indication that her position was in jeopardy, Shippen did not search for other employment, and by the time she learned her position was being eliminated she had already missed the primary hiring season in the independent-school

community; had she known her position was at risk, she would have begun searching as early as November 2023 to secure a comparable position in time for the 2024–2025 school year." ECF No. 13 ¶ 33. Any facts supporting justifiable reliance in November 2023 must be tied to a material misrepresentation made at that time. Shippen could not have relied on the issuance of her employment agreement when she chose not to look for other jobs during the primary hiring season because, by her own account, that season preceded the alleged misrepresentation by several months. *Id.* Accordingly, to show justifiable reliance, Shippen must identify some action she took—or forbearance in which she engaged—in reliance on the issuance of her employment agreement in June 2024.

The Court will dismiss Count II of Shippen's complaint because she has failed to allege sufficient facts showing justifiable reliance. Specifically, Shippen has not alleged facts demonstrating that she justifiably relied on the alleged misrepresentation made in June 2024. This Court will grant Shippen leave to amend her claim, provided she can plausibly allege sufficient facts showing justifiable reliance.[2]

---

[2] Defendant also argues that Plaintiff's negligent misrepresentation claim is barred by the economic loss and gist of the action doctrines. The "gist of the action doctrine bars tort claims (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *KBZ Commc'ns Inc. v. CBE Technologies LLC*, 634 F. App'x 908, 911 (3d Cir. 2015). The injured party must show that an independent event gave rise to the tort claim, separate from a breach of a contractual duty. *Addie v. Kjaer*, 737 F.3d 854, 866 (3d Cir. 2013); *see Bruno v. Erie Ins. Co.*, 106 A.3d 48, 71 (Pa. 2014).

Similarly, the economic loss doctrine bars tort claims arising from duties owed under a contract between the parties. *See Dittman v. UPMC*, 196 A.3d 1036, 1052 (Pa. 2018) (explaining that whether a plaintiff's claim is barred by the economic loss doctrine depends on the "source of the duty plaintiff claims the defendant owed"). However, an exception to the economic loss doctrine exists for claims involving "pecuniary loss" resulting from supplying "false information for the guidance of others in their business transactions." Restatement (Second) of Torts § 552 (1) (1977); *Bilt-Rite Contractors, Inc*, 866 A.2d at 288 (holding "that the economic loss rule does not apply to claims of negligent misrepresentation sounding under Section 552"); *see Chand*, 2019 WL 3387056, at *5–6 (applying the exception where a company's hiring committee owed a general duty to avoid supplying an applicant with false information). Thus, a party may avoid application of the economic loss doctrine by showing either that the duty arose independently of the contract or that the claim falls within the Section 552 exception.

## V. Conclusion

For the foregoing reasons, this Court grants Defendant's motion to dismiss only with respect to Plaintiff's negligent misrepresentation claim. Plaintiff may cure the deficiencies within 14 days of the issuance of this Court's related Order.

---

Shippen's claim is not barred by the economic loss or the gist of the action doctrines because it arises from a general duty owed independently of any contract. Her claim does not arise out of a breach of the employment agreement. Instead, it centers on PMFS's alleged misrepresentation of its ability to employ Shippen. Accordingly, the gist of the action doctrine does not bar her claim. Nor does the economic loss doctrine because, whether the duty falls within the exception to the doctrine, as in *Chand*, or arises independently of any contractual duty, the claim is not barred. *Bilt-Rite Contractors, Inc.*, 866 A.2d at 288.